JUDGE BRIEA...

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SUNTRUST BANK,

      Plaintiff,

 -against-

2003 29-FOOT SALT SHAKER
MOTOR YACHT "MASABETH",
Official Number 1139586, her engines,
tackle, equipment, furniture, accessories,
etc. *in rem*, and FELIX CARCANO and
PATRICIA CARCANO, *in personam*,

      Defendants.
--------------------------------------------------------X

08 CV 1042

**VERIFIED COMPLAINT
*IN REM* AND *IN PERSONAM*
TO FORECLOSE FIRST
PREFERRED SHIP MORTGAGE**

FILED
U.S. DISTRICT COURT
2008 JAN 31 PM 4:29
S.D. OF N.Y.

COMES NOW plaintiff, SunTrust Bank, and sues the defendant vessel "MASABETH" ("Vessel") *in rem*, and defendants Felix Carcano and Patricia Carcano *in personam* to foreclose a first preferred ship mortgage, and for breach of contract on a promissory note, security agreement and first preferred ship mortgage, and alleges as follows:

1. This is a case of admiralty and maritime jurisdiction as conferred upon this Court by 28 U.S.C. §1333, 46 U.S.C. §31325, Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims, and Rule 9(h) of the Federal Rules of Civil Procedure.

2. Plaintiff, SunTrust Bank, is a banking corporation in good standing organized and existing under the laws of the State of Georgia.

3. Defendant motor yacht "Masabeth", Official Number 1139586, ("Vessel"), is a United States federally documented vessel and is now and during the pendency of this action will

be within this District, at Nichols Yacht Yard, 500 Rushmore Avenue, Mamaroneck, New York 10543.

4. Defendants Felix and Patricia Carcano (collectively "defendants") are domiciled in New York and reside at 18 Elizabeth Place, Armonk, New York 10504, within this District.

5. Venue and jurisdiction are proper in that the Vessel is located in this District, Defendants are domiciled and reside in this District, and operate a business within this District.

6. Plaintiff has performed all conditions precedent to bringing this action.

### Count I—*In Rem* Claim v. Defendant Motor Yacht "Masabeth"

7. Plaintiff realleges and reaffirms paragraphs 1-6 and further alleges:

8. On October 31, 2002, Defendants duly made, executed and delivered to plaintiff a marine installment note, disclosure statement and security agreement ("Note") in the principal amount of $183,727.00, together with interest on the unpaid balance at a rate as set forth therein. A copy is attached as Exhibit A.

9. On October 31, 2002, defendants duly made, executed, granted and delivered to plaintiff a first preferred ship mortgage ("Mortgage") in the amount of $183,727.00, as security for the Note, mortgaging the whole of the defendant Vessel "Masabeth", together with her equipment and other items named in the Mortgage. A copy is attached as Exhibit B.

10. The Mortgage was duly recorded by the United States Coast Guard on March 26, 2003, at the National Vessel Documentation Center in accordance with the Ship

Mortgage Act of 1920, as amended, 46 U.S.C. §31321 *et seq.* and applicable Coast Guard Regulations, 46 CFR §67.1 *et seq.*

11. Notwithstanding demand by plaintiff to do so, defendants failed to comply with the terms and conditions of the Note and Mortgage in that they failed and refused to pay the monthly payments due for the months of September, October, November and December, 2007, which is a default under the Note and Mortgage.

12. Plaintiff SunTrust Bank has informed defendants of said default and in exercise of its rights under the Note and Mortgage has demanded payment from defendants Felix and Patricia Carcano of the unpaid balance of principal, accrued interest and late charges, as therein provided.

13. In further violation of the Note and Mortgage, defendants sold their 100% interest in the Vessel for an undisclosed sum on or about December 6, 2003, to Kenneth E. Raske ("Raske"), who paid part of the purchase price with a loan secured by a preferred ship mortgage from the Bank of America in the amount of $149,992.04. The bill of sale to Raske and the mortgage of the Bank of America were duly recorded by the Coast Guard on December 18, 2003, approximately nine months after plaintiff's Mortgage and Note were recorded, as shown by the Coast Guard Abstract of Title (a copy is attached as Exhibit C).

14. Defendants did not inform plaintiff SunTrust Bank of said sale or of the loan obtained by Raske from the Bank of America secured by a preferred ship mortgage, and no part of the purchase price paid by Raske was used to pay off the unpaid balance of the Note and Mortgage held by plaintiff SunTrust Bank. The Note and Mortgage both expressly prohibit any sale or transfer of any interest in the Vessel without written

3

permission of the mortgagee, SunTrust Bank. The Note, in the paragraph titled "Notice Required Upon Transfer" provides that defendants "agree not to transfer possession of or sell, transfer, or assign an ownership interest in the collateral [Vessel] to any person or entity not a party to this Note without notice to you [SunTrust Bank] and your [SunTrust Bank's] written approval. The Mortgage, in paragraph (12) provides: "Owner [Defendants] shall not, without the prior written consent of Mortgagee [SunTrust Bank], sell, transfer, assign or mortgage the Vessel or any interest in the Vessel…"

15. Defendants concealed from SunTrust Bank the aforesaid sale and kept for themselves the money Raske paid for the Vessel, which was in excess of the $149,992.04 borrowed by Raske to help pay for the Vessel; the concealment permitted them to avoid having to pay off the balance due SunTrust under its Note and Mortgage in the approximate amount of $180,000 as of December, 2003. They caused the sale to be made by an entity named "MAC Yacht Sales, Inc.", a yacht brokerage business which they control and operate located at 155 E. Boston Post Road, Mamaroneck, New York. The records maintained by the Coast Guard at the National Vessel Documentation Center do not disclose any sale of, or transfer of title to the Vessel from defendants to said MAC Yacht Sales, Inc. As part of the said concealment, defendants continued to make the monthly payments called for in the Note and Mortgage, although with numerous late payments, through August, 2007.

16. Plaintiff SunTrust Bank discovered the sale of the Vessel to Raske only after defendants stopped making monthly payments on the Note in September, 2007; after the payments were three months in arrears, plaintiff obtained from the Coast Guard an Abstract of Title (Exhibit C) on or about November 30, 2007, and learned for the first time of said sale.

4

17. Defendants have been put on notice that the sale of the Vessel without plaintiff's knowledge and written consent constitutes a default under the Note and Mortgage.

18. There is now due and owing to plaintiff under the Note and Mortgage the sum of $166, 009,97.23 through January 9, 2008, consisting of unpaid principal, accrued interest, fees and charges (with interest at a daily per diem of $27.43692 after that date ).

19. Plaintiff is entitled to attorneys' fees and costs pursuant to the Note and Mortgage. The attorneys' fees allowed include 25% of the amount due, or the highest amount permitted under applicable law.

WHEREFORE, Plaintiff prays that Process for the arrest *in rem* in due form of law, pursuant to 46 U.S.C. § 31325(b)(1), according to the practices of this Court in admiralty and maritime causes, may issue against the defendant Motor Yacht "Masabeth", Official Number 1139586, her engines, tackle, equipment, furniture, accessories, etc., causing her to be arrested by the United States Marshal for the Southern District of New York, and that all persons having or claiming any interest therein be cited to appear and answer, under oath, all and singular the matters aforesaid; that the defendant Vessel "Masabeth" be adjudged liable to plaintiff SunTrust Bank in the amount of its claim, $165,461.23, plus interest and late fees, storage and custodial costs, costs, and incidental and consequential damages pursuant to the terms of the Note and Security Agreement, and Mortgage, together with reasonable attorneys' fees and costs herein; and that the defendant Vessel "Masabeth" be condemned and sold to satisfy plaintiff's claim, with the proceeds distributed according to law, with the above described First Preferred Ship Mortgage held by plaintiff SunTrust Bank being given the status of a preferred ship

mortgage entitled to the priority of a preferred mortgage lien; and that the plaintiff may have such other and further relief as the Court may deem just and proper.

### Count II—*In Personam* Claim v. Defendants Felix Carcano and Patricia Carcano for Breach of and Default on Promissory Note and Preferred Ship Mortgage

20. Plaintiff realleges and reaffirms paragraphs 1-19.

21. Defendants have breached, and are in default of the provisions of the Note (Ex.A) in that they have not made the monthly payments for September, October, November and December, 2007, and plaintiff SunTrust Bank has accelerated the provisions of the Note, and demanded full payment of all unpaid principal, accrued interest and late charges. They have further breached and are in default of the provisions of the Note and of the Mortgage (Ex. B) in that they sold the mortgaged Vessel without informing SunTrust Bank and without obtaining its prior written permission. They kept the proceeds of sale themselves and did not pay off the loan, even though the collateral Vessel had been sold.

22. As a result of the breach and default, plaintiff has been damaged in the amount of $166,009.97 through January 9, 2008 consisting of unpaid principal, accrued interest and late charges due on the Note (with additional interest at a daily per diem of $27.43692 starting on January 10, 2008).

23. Plaintiff is entitled to attorneys' fees and costs pursuant to the Note and the attorneys' fees allowed include 25% of the amount due, or the highest amount permitted under applicable law.

WHEREFORE, Plaintiff prays that pursuant to 46 U.S.C. § 31325(b)(2), and because of their breach of and default on the Note and Mortgage, defendants Felix Carcano and Patricia Carcano, and each of them, jointly and severally, be adjudged liable to plaintiff in the amount of $166,009.97 plus interest and late fees, storage and custodial

costs, costs, incidental and consequential damages pursuant to the terms of the Note and Mortgage, together with reasonable attorneys' fees and costs herein, and that plaintiff may have such other and further relief as the Court may deem just and proper.

Dated: New York, New York,
        January 31, 2008

                              Respectfully submitted,

                              FREEHILL HOGAN & MAHAR, LLP
                              Attorneys for Plaintiff
                              SUNTRUST BANK

                    By: _____
                              Patrick J. Bonner (PB 3352)
                              80 Pine Street
                              New York, New York 10005
                              (212) 425-1900

## **VERIFICATION**

STATE OF NEW YORK

CITY OF NEW YORK

I, PATRICK J. BONNER, ESQ., am duly sworn and say that I am the attorney of record for Plaintiff SUNTRUST BANK in this action and that I have read the foregoing Verified Complaint and am familiar with its contents, which are true to the best of my knowledge and belief. The sources of my information and grounds for my belief are documents attached as exhibits, and correspondence and conversations with the Plaintiff concerning the circumstances and facts set forth in the Verified Complaint. This Verification is made by me because the Plaintiff is a corporation located in Georgia and none of the officers or directors are presently within the District. I state that I am authorized to make this representation on behalf of the Plaintiff.

_____
PATRICK J. BONNER, ESQ. (PB 3352)

# SunTrust Marine Instalment Note, Disclosure Statement and Security Agreement

**SUNTRUST**

Account # _____

| Lender: | Borrower (and Co-Borrower) Name and Address (include County and Zip Code): |
|---|---|
| SunTrust Bank<br>919 East Main Street<br>Richmond, Virginia 23219 | Felix Carcano<br>18 Elizabeth Place<br>Armonk, NY 10504<br>Westchester County     Patricia Carcano<br>18 Elizabeth Place<br>Armonk, NY 10504<br>Westchester County |

**Parties:** In this Note, the words "I", "me", "my", "we" mean any person who signs this Note as Borrower, Co-Borrower, or Co-Signer (all of whom are included in the term "Co-Signer"). The words "you" and "your" mean the Lender, SunTrust Bank, or any Assignee of this Note.

**Collateral:** This loan will be secured by collateral consisting of the vessel described below and all its equipment, all of which are included in the terms "vessel" and "collateral" as used in this Note, and which will be used for personal and family recreational use only.

| Vessel | Year | Length | Make | Model | Hull Identification Number | Official #/ State # |
|---|---|---|---|---|---|---|
| ☒ New<br>☐ Used | 2003 | 29' | Salt Shaker | 290 Combi | TQM29F121203 | Applied For |

**ENGINES:**

| | Year | Manufacturer | H.P. | Engine Serial Number |
|---|---|---|---|---|
| ☐ Gas   ☐ Single<br>☒ Diesel   ☒ Twin | 2003 | Cummins | 330 | Port 46056160<br>Starboard 46043834 |

**TRAILER: (If Applicable)**

| Year | Make | Model | VIN Number |
|---|---|---|---|
| | | | |

**Promise To Pay:** I promise to pay you or order the "Total of Payments" disclosed below according to the payment schedule disclosed below.

| ANNUAL PERCENTAGE RATE<br>This is what my credit will cost as a yearly rate. | FINANCE CHARGE<br>This is the dollar amount the credit will cost me. | Amount Financed<br>This is the amount of credit provided me. | Total of Payments<br>This is the total amount I will pay if I make all payments as scheduled. |
|---|---|---|---|
| 6.2 % | $ 137,287.40 | $ 183,727.00 | $ 321,014.40 |

My payment schedule will be:

| Number Of Payments | Amount Of Payments | When Payments Are Due |
|---|---|---|
| 240 | $1,337.56 | Monthly Beginning    December 1, 2002 |

**Estimates:** The "Finance Charge" and "Total of Payments" disclosed above are estimates, as are the amount of payments disclosed. These amounts have been computed on the assumption that all payments will be received on their scheduled due dates.

**Late Charge:** If I don't pay any payment in full within 7 days of the day it is due, I will have to pay you a late charge of 5% of the amount which is late.

**Security:** I am giving you a security interest in the vessel described above.

**Prepayment:** I will not have to pay a prepayment penalty.

I should refer to my Note documents for any additional information about nonpayment, default, prepayment refunds, any required repayment in full before the scheduled date, and other matters pertaining to this loan.

## Itemization Of Amount Financed

| | | |
|---|---|---|
| Paid directly to me or deposited in my account # | First Union National Bank, Acct # 8886567358 | $ 183,727.00 |
| Used to pay off other loans with SunTrust: _____ | | $ _____ |
| Paid to others on my behalf:<br>Filing and Recording Fees................................ | | $ _____ |
| Pay off loans at other banks............................. | | $ _____ |
| Other (Identify payee and describe purpose)........ | | $ _____ |
| Amount Financed................................................. | | $ 183,727.00 |
| Prepaid Finance Charge..................................... | | $ _____ |

**Property Insurance:** I understand that I may choose the person who sells me the required property insurance.

**Important:** I understand that there are important provisions on the reverse side of this Note and that I should read these before I sign this Note.

I signed this Note on    October 31, 2002

Exhibit A

## Additional Terms and Conditions

**Additional Charges:** I will pay you a late charge of 5% of the amount of any payment not paid within 7 days of the date it is due. My payment will be applied first to pay any charges or fees I owe under this Note, second to any unpaid Finance Charge, and thereafter, to reduce principal, or in any other order you wish. I will pay a Finance Charge (at the annual percentage rate disclosed on the reverse side) on all amounts remaining unpaid at maturity, or upon acceleration. If I have made a payment with a check or have authorized you to make an automatic transfer of funds from an account for such a payment, and you are unable to credit this Note because of insufficient funds, a closed account, a stop payment, or for any other reason, I may have to pay you the fee established from time to time for returned checks.

**Prepayment:** I may prepay in advance in any amount at any time without penalty. Payments will first be applied to interest to the date of actual payment and the remainder to principal.

**Acceleration And Default:** If a default occurs, you have the right, at your option and without giving me prior notice or demand, to require that I pay immediately the full amount that I owe under this Note. Until this amount is paid in full, I will pay interest computed at the Annual Percentage Rate disclosed on the reverse side of this Note. A default occurs if (a) I do not make a payment, together with my late charge, within 7 days of the date it is due (b) I am in or file for bankruptcy, receivership, or an insolvency proceeding (c) I die or any Co-borrower or Co-signer dies (d) any order or attachment, levy or garnishment is issued against me or any Co-borrower or Co-signer or property, assets or income of mine or of any Co-borrower or Co-signer (e) I fail to perform any promise I make in this Note or any other Note with you or (f) you deem yourself insecure or (g) I or any Co-borrower or Co-signer commits fraud or makes a material misrepresentation at any time in connection with this Note.

**Security Interest:** To secure all obligations and indebtedness under this Note and to secure payment of all other obligations of any kind that I owe you now or may owe you later, I give you a security interest under the Uniform Commercial Code in the vessel described on the reverse side and all accessions (such as accessories or equipment now or later included in or affixed to it), collectively referred to as "collateral" and I also agree that you may have a Preferred Ship Mortgage on the collateral. As additional security, I give you a security interest in all rebates of unearned premium on insurance written in connection with this Note. You have the right to know at all times exactly where the collateral is and inspect it whenever you wish.

**Insurance:** I agree to keep the vessel insured for full value against loss or damage with an insurance company of my choice. As permitted by applicable law, you have the right to disallow the insurer for reasonable cause. The deductible on such insurance shall be no greater than 2% of the amount insured. I will name you as loss payee on the policy and will deliver the policy to you. I will promptly pay all insurance premiums when due, provide proof of payment upon request, and notify you if coverage lapses. If I do not comply with any of these requirements and if Vendor's Single Interest Insurance has not been obtained in connection with this Note you at your option may, without waiving your right to declare such noncompliance a default under this Note, obtain loss or damage insurance at my expense. I agree to reimburse you for any insurance premium plus interest on such premium at the highest rate applicable to this debt until the premium and interest are paid in full. The premium plus any interest, at your option, will be (a) payable on demand or (b) added to the total outstanding balance of the debt secured by this Note and my remaining monthly payments will be increased to cover these additional amounts. The insurance obtained by you, at your option, may be single or dual interest, protecting my rights, your rights or our joint rights. Any insurance obtained by you may provide, at your option, that such insurance will pay the lesser of the unpaid balance of my debt or the repair or replacement value of the collateral. You may use the proceeds of any insurance obtained by you or by me to repair or replace the collateral, or if you elect to do so, to repay part or all of the debt, and I will be responsible to repay any remaining unpaid balance of the debt. I assign to you all amounts payable under the insurance, including any unearned premiums, directing the insurer to make payment directly to you, and I appoint you my attorney-in-fact to endorse any draft. The collateral may not be removed from the navigational limits set forth in the insurance policy or in any case from the waters of the continental United States.

**Cancellation Of Insurance:** Any refund from a cancellation of any insurance applicable to this Note, including any applicable rebate of Finance Charge, shall be treated as a partial prepayment.

**Documents For Filing:** If you ask, I will sign any other document you want to have filed or recorded for the purpose of perfecting the security interest I am giving you in this Note including all documents necessary for you to have a properly filed, recorded and perfected Preferred Ship Mortgage on the collateral. I hereby appoint you as my attorney-in-fact and give you an irrevocable Power of Attorney to do whatever you may deem necessary to perfect or to continue a perfected security interest in the collateral and to protect the collateral. If you choose, you may file a copy of this Note or any other security agreement or financing statement, as a financing statement under the Uniform Commercial Code. If the goods are titled, I will do whatever is necessary to apply for, obtain, and deliver to you certificate(s) of title, properly showing the security interest created in this Note. I agree that any reproduction of this Note or of a financing statement shall be sufficient as a financing statement. I will pay all costs required for such filings.

**Notice Required Upon Transfer:** I agree not to transfer possession of or sell, transfer, or assign an ownership interest in the collateral to any person or entity not a party to this Note without notice to you and your written approval.

**Repossession:** If a default occurs, you may exercise at your option any and all of the rights and remedies on default of a secured party under the Uniform Commercial Code or other applicable law and all rights provided in this Note including without limitation the right to take possession of the collateral without my permission and without giving me notice or demand or judicial hearing. I authorize you to enter my property lawfully with or without a court order for the purpose of taking possession of the collateral, and selling it as provided by any state or federal law, at your option, regardless of whether it is subject to a Preferred Ship Mortgage and recover any deficiency against me in state or federal courts.

Having Knowledge That I May Have The Right Under Applicable Law To Notice And A Judicial Hearing Prior To The Taking or Possession Of The Collateral Upon Default Hereunder, I Expressly Waive Any And All Such Rights To Prior Notice And Judicial Hearing Prior To The Taking Of Such Possession By You Or By Any Officer Authorized By Law To Effect Repossession And Release You From Liability In Connection With Such Repossession.

**Other Property Taken:** You may take possession of any property not subject to your security interest which is in, on, or attached to the collateral at the time you take possession of the collateral such as a dinghy. You may hold such other property unless:
(a) I first demand in writing that you return such other property, and
(b) The demand is sent to you by certified mail within 5 days after you take possession of such other property, and
(c) The written demand clearly describes such other property.

**Payment of Attorney's Fees And Other Costs:** If you take collection action, I must pay all collection costs including but not limited to your reasonable attorney's fees of 25% of the amount due (or if this is not permitted under applicable law, the highest amount permitted) at the time the account is referred to an attorney for collection, plus your out-of-pocket collection expenses and all court costs.

**Miscellaneous:** I agree to indemnify you and any Assignee against loss or damage and to hold you harmless from any and all loss or damage to persons or property, or expense, caused by the collateral, or by the use of or operation of the collateral. I will not use the collateral for charter or commercial use.

**Other Rights You Have:** You may waive or delay enforcing any of your rights without losing them. You may assign any rights that you have under the Note and any rights that you have to the Collateral may be exercised by any Assignee. You may enforce this Note against my heirs and legal representatives. If any part of this Note is found to be unenforceable, this will not make any other part unenforceable.

**Each Signer Responsible:** Although more than one party may sign this Note, whether as Borrower or Co-Borrower or Co-Signer, we know that each of us is totally responsible for all promises and for paying all amounts owed under this Note.

**Entire Agreement:** We acknowledge that this Note represents the entire agreement between the parties and supersedes any prior or contemporaneous oral or written understanding or representation.

**Modification Or Waiver:** Any modification or waiver of the provisions of this Note shall not be effective unless it is in writing and signed by the parties.

**Governing Law:** This note is governed by the internal law of the Commonwealth of Virginia and applicable federal law.

**Assignment By Lender:** The Lender may assign this Note.

---------- Space Below This Line for Acknowledgments ----------

Jurisdiction: **State** of **New York**

City/County of: **Westchester** To Wit:

On this the **31st** day of **October** **2012** before me, **_____ P. _____**, a notary public for the above Jurisdiction, personally appeared **_____**

Acknowledgment On Behalf Of A Corporation, Limited Partnership, Or Other Entity

State of: _____ City/County of: _____

On this the _____ day of _____, _____ before me, _____, a notary public for the above

# SunTrust
# First Preferred Ship Mortgage

THIS FIRST PREFERRED SHIP MORTGAGE ("Mortgage" or "Preferred Ship Mortgage") dated, __OCTOBER 31, 2002__, on the whole of the Vessel __SALT SHAKER 301__ (as more fully described below, the "Vessel"), which will normally be kept at __POST ROAD BOATYARD - MAMARONECK, NY__, made by __FELIX CARCANO AND PATRICIA CARCANO-JTWROS (100%)__

residing at __18 ELIZABETH PLACE, ARMONK, NY 10504__, (collectively "Owner" or "Mortgagor"), being the sole owner(s) of the Vessel, to SunTrust Bank, its successors and assigns ("Mortgagee" or "SunTrust"), located at __147 Old Solomons Island Road, 5th Floor, Annapolis, MD 21401__ provides:

WHEREAS Owner is the sole owner of 100% of the interests in the Vessel which is being mortgaged to the Mortgagee to secure a promissory Note made by __FELIX CARCANO AND PATRICIA CARCANO__

guaranteed and/or endorsed by _____
(all parties liable for payment are included in the term "Borrower"), dated __OCTOBER 31, 2002__, in the principal amount of $ __183,727.00__, payable to the order of SunTrust ("Note", which shall include any security agreement or other documents incorporated in the Note, and any modifications, extensions or renewals), and

WHEREAS Owner has agreed to give this Preferred Ship Mortgage as security for the Note, and has authorized the execution and delivery of this Mortgage to Mortgagee,

NOW, THEREFORE, in consideration of the promises made herein, and for other valuable consideration, receipt of which is acknowledged, and to secure payment of the indebtedness, including interest, late charges, and other sums that may become due to Mortgagee under the Note or any provision of this Mortgage, Owner mortgages and conveys to the Mortgagee, its successors and assigns, the Vessel described below, and further described in the last issued Certificate of Documentation issued by the Secretary of Transportation for the Vessel and included herein by this reference:

| Name | Model Year | Make |
|---|---|---|
| SALT SHAKER 301 | 2003 | SALT SHAKER |
| **Hull Identification Number Or VIN** | **Official Number** | **Model And Type of Vessel** |
| TQM29F121203 | | 290 COMBI |

together with all equipment, furniture, accessories, electronic equipment, personal property, apparel, belongings, fittings, sails, rigging, engines, including outboard motors, tools, boats, including jet ski boats, anchors, chains, tackle, galley equipment, trailer, fishing equipment, bicycles, motorcycles, mopeds, television sets, radar, loran, telephones, radios, scuba equipment, and other appurtenances and accessories and additions, improvements and replacements now or in the future belonging to the Vessel, which are on the Vessel or are normally carried on it, whether or not removed from the Vessel, all of which are included in the term "Vessel" as used in this Mortgage and are covered by this Mortgage to secure the Note.

The Mortgagee shall hold this Preferred Ship Mortgage on the Vessel until all terms and provisions of the Mortgage and of the Note have been performed and there are no amounts due Mortgagee, at which time this Mortgage shall cease.

## Covenants Of Owner And/Or Borrower

Owner and/or Borrower covenant and warrant that:

1. Owner is and shall remain a citizen of the United States entitled to own and operate the Vessel under its Certificate of Documentation, which Owner shall maintain; all action necessary for the execution, delivery and validity of this Mortgage and the Note has been taken; execution of this Mortgage by a person under a power of attorney to this Mortgage is binding as if executed by the party; if Owner is a corporation, limited partnership or other company, organization or association whose liability is limited by law, or a partnership, Owner is duly organized and is and shall continue in good standing under the laws of the state of organization and in any other state where Owner does business, and is authorized to execute the Note and this Mortgage.

630156 (HD 5/00)



Page 1 of 5

2. Owner owns and possesses the Vessel free from all liens and encumbrances except for the following: _____ _____.
Owner shall warrant and defend title to and possession of all and every part of the Vessel for the benefit of Mortgagee against all other persons. Owner shall not set up any claim of Owner against Mortgagee under any past or future transaction.

3. Owner shall, at its expense, keep the Vessel fully insured under a marine insurance policy covering the risks customary in policies insuring recreational Vessels, with a policy valuation not less than the value of the Vessel, which, after subtracting any deductible, must be equal to at least the unpaid principal balance of the Note. This insurance shall include protection from risks and liabilities reasonably specified by Mortgagee. All insurance shall be taken out in Owner's name and shall be payable to Mortgagee Insurers and amounts shall be subject to Mortgagee's approval. Owner shall notify, and Owner and/or Mortgagee shall request all insurers and their agents to agree to notify Mortgagee, reasonably in advance, of any cancellation or material change in any insurance coverage. All policies and binders shall be delivered to Mortgagee with satisfactory evidence that all premiums and charges have been paid. Owner shall maintain such insurance during the life of the Mortgage. Mortgagee may at any time request proof from Owner that the insurance is in force. Failure by Owner to furnish proof within 7 days of receiving a request shall be a default.

4. Owner shall comply with, and not permit the Vessel to be operated contrary to, the laws, treaties, conventions, rules, regulations or orders of the United States, any state and any other jurisdiction where it is operated, and shall not remove the Vessel from the limits of the United States. Owner shall do everything necessary to establish and maintain this Mortgage as a Preferred Ship Mortgage on the Vessel. Owner shall operate the Vessel at all times with a recreational endorsement only and as a "recreational Vessel" as defined in 46 U.S.C. §30101 (4)(A), and applicable regulations, except that the Vessel shall not be leased to or chartered by another.

5. Each Owner and Borrower (1) agrees to be bound by the provisions of the Mortgage and Note as such provisions apply to it; (2) consents to being joined, if reasonably necessary for complete relief to be granted, in any enforcement action on the Note or Mortgage, and (3) acknowledges that the Mortgagee was loaning or disbursing funds on the condition that the Note was validly executed and secured by this Mortgage; **provided, nothing shall make any Owner who is not a Borrower liable for payments due under the Note.**

6. Borrower, by executing this mortgage, by receiving money loaned or by receiving commitment for money to be loaned under the Note, by having actual knowledge when executing the Note that the Mortgagee intended to secure it with a mortgage, or by having such knowledge at any time and not promptly notifying the Mortgagee in writing by Certified Mail that the Borrower did not consent to this Mortgage, hereby agrees to this Mortgage and agrees that each Borrower may be regarded as a co-maker of the Note, and may be joined as defendant in any action to foreclose this Mortgage.

7. Owner and Borrower give Mortgagee the right, upon default of any provision of the Note or this Mortgage, to repossess the Vessel wherever it may be found and sell it, and if, after deducting from the proceeds of sale all amounts due Mortgagee under the Note, including but not limited to costs and attorneys' fees, and costs of cleaning, transporting, commissions, repairs, reconditioning, new equipment, storage and dockage fees, and all other costs determined by Mortgagee, in its sole discretion, to be in its interests to incur, there is a deficiency, in that the proceeds are insufficient to pay Mortgagee all amounts due to it, Mortgagee may sue any or all parties liable on the Note, jointly and severally, for the deficiency in any appropriate state or federal court and in the event of suit, recover costs and attorneys' fees.

8. Owner shall keep prominently posted by the Vessel's wheel or tiller, or in the cabin, a notice that the Vessel is subject to a Preferred Ship Mortgage in favor of SunTrust, that no liens may be placed upon the Vessel without SunTrust's written permission, and that the Vessel may not be leased to or chartered by any third party.

9. Owner shall pay when due all taxes, assessments, license fees, governmental charges, fines and penalties imposed upon the Vessel and promptly discharge any and all liens and claims upon the Vessel. Owner shall at all times keep the Vessel in good repair, appearance and working order.

10. If the Vessel shall be libeled, arrested, attached, detained or repossessed by any third party, seized or levied upon, or taken into custody under process or under color of any authority, Owner shall immediately notify Mortgagee, confirmed by letter sent by Certified Mail, and release, and recover the Vessel within fifteen days.

11. Owner shall at all reasonable times afford Mortgagee complete opportunity to inspect the Vessel and immediately upon request by the Mortgagee, Owner shall indicate the exact location of the Vessel. Owner shall promptly, and in any event within 60 days, pay all charges for repairs or other services to the Vessel, goods, supplies, wages, fuel, dockage, storage fees, or any other necessaries, not disputed within 10 days in writing to the creditor, with a copy sent by Certified Mail to Mortgagee. Owner shall promptly inform Mortgagee in writing whenever the total of such undisputed charges not paid within 60 days from the date billed exceeds $1,000. Owner shall also notify Mortgagee promptly of any accident in which the Vessel is involved, or of damage to the Vessel.

12. Owner shall not, without the prior written consent of Mortgagee, sell, transfer, assign or mortgage the Vessel or any interest in the Vessel, or, if a corporation, merge or consolidate with any other person, firm or corporation, or dissolve.

13. From time to time Owner shall execute and deliver such other instruments and assurances as Mortgagee may require to perfect or continue this lien and to enforce the terms of this Mortgage or the Note, for operation of the Vessel, or sale of the Vessel by Mortgagee upon the occurrence of an Event of Default as defined below.

**Default**

1. Any one or more of the following events shall be an "Event of Default."
    (a) **Default of Indebtedness.** If any payment due on the Note is not made when due.

- (b) **Other Defaults.** Failure to comply with or to perform any term, obligation, covenant or condition in this Mortgage or the Note, or any other agreement with Mortgagee.
- (c) **Insolvency.** The death of Owner or the dissolution, merger, consolidation or termination of Owner's existence as a going business, Owner's insolvency or inability to pay debts as they mature, the appointment of a receiver for Owner's property, any assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Owner (except as creditor of a third party).
- (d) **Creditor Or Forfeiture Proceedings.** The entry of a judgment against Owner, or the commencement of foreclosure or forfeiture proceedings, repossession, or any other act by any creditor of Owner or by any governmental agency, against the Vessel or any other collateral securing the indebtedness, including garnishment of any of Owner's deposit accounts with Mortgagee.
- (e) **Breach Of Warranties.** The breach of any of Owner's representations or warranties in this Mortgage or any other agreement with Mortgagee.
- (f) **Deterioration Of Vessel.** Any deterioration or impairment of the Vessel or any decline or depreciation in the value or market value of the Vessel which causes the Vessel in the sole judgment of Mortgagee to become unsatisfactory as to value. Mortgagee may from time to time require that the Vessel be appraised, and Owner shall do so promptly at Owner's expense, or Mortgagee may itself have the Vessel appraised, and Owner shall promptly pay or reimburse Mortgagee for the cost.
- (g) **Fraud Or Misrepresentation.** Owner commits fraud or makes a material misrepresentation, or omits to disclose facts necessary to keep any representation made from being misleading, at any time in connection with this Mortgage, the Note or the application for the loan related to the Note.
- (h) **Acts Of Borrower.** Any of the preceding Events of Default occurs with respect to any Borrower.
- (i) **Location Of Vessel.** Failure or refusal by Owner or any other person in control of the Vessel to keep Mortgagee promptly informed of the exact place where the Vessel is normally berthed, or its location if away from such place for a period in excess of one month.

2. In the event of an Event of Default, Mortgagee may:
   - (a) Accelerate and declare immediately due and payable all the unpaid principal, accrued interest, any late charges, and, as permitted by applicable law, any other amounts due under the Note or this Mortgage, after which these amounts shall bear interest at the rate provided for in the Note. Any repossession of the Vessel by Mortgagee, or suit on the Mortgage or Note, or other action taken by Mortgagee authorized in (b) through (f) below, shall also constitute such a declaration by Mortgagee, even if no such declaration, or demand for payment, has been made previously to Owner or Borrower.
   - (b) Bring suit in federal or state court against the Vessel, Owner and/or any or all Borrowers, jointly and severally, and in such action, recover all costs of suit, including reasonable attorneys' fees. Owner consents to the appointment of a substitute custodian selected by Mortgagee. Mortgagee may also obtain appointment of a receiver for the Vessel. Mortgagee may at any time dismiss any action and take possession of the Vessel and exercise all powers given under this Mortgage, including those given in section (d) below.
   - (c) Recover judgment for any amounts due and collect it out of any property of Owner and/or Borrower, provided, that where Owner is not a Borrower, judgment shall not be against Owner personally, but only against the Vessel, in rem, and/or Borrower.
   - (d) In addition to all other remedies provided, repossess the Vessel without legal process, or use state legal process to do so, including but not limited to bringing an action in replevin or the equivalent, at any time, wherever the Vessel may be, and, without being responsible for loss or damage, hold, and in Mortgagee's or in Owner's name, sell, lease, charter, operate, transfer, or otherwise use the Vessel for the time and upon the terms as Mortgagee deems advisable. Mortgagee may sell the Vessel free from any claim by Owner, and the sale may include all items on board the Vessel at the time it is retaken by Mortgagee or normally on board but removed by Owner. If Mortgagee elects, repossession and sale may take place under state law and this Mortgage shall not be used to prevent election to use state law remedies. To the extent permitted by law, the sale may be public or private, without notice to Owner or Borrower, without having the Vessel present, and Mortgagee may be the purchaser and for payment may pay all or part of the indebtedness secured by this Mortgage. Owner agrees that it will cooperate fully to permit peaceful repossession, and will disclose promptly the exact location of the Vessel to permit Mortgagee to obtain possession of it.
   - (e) If Mortgagee repossesses the Vessel, or proceeds in federal or state court under either the Note, or Mortgage or both or otherwise obtains the Vessel, it may make use of any trailer the Vessel is on. If the trailer is owned by Owner, with no lien, the trailer shall be regarded as part of the Vessel. If the trailer is owned by a third party, or is subject to a third party lien superior to this Mortgage, the trailer may be used by the Mortgagee for a reasonable time as needed to move the Vessel to a place of Mortgagee's choice where the Vessel can be removed from the trailer. The trailer shall then be returned by Mortgagee, at Owner's expense, to the place where it was originally located.
   - (f) For purposes of dealing with the Vessel following any Event of Default, Mortgagee and its agents are irrevocably appointed the true and lawful attorneys of Owner in Owner's name and stead for all purposes, including but not limited to selling the Vessel and doing all things (including execution of documents) necessary to the sale.

3. In the event of default, Owner and any other person on the Vessel shall immediately leave upon the oral or written request of Mortgagee, and shall leave the Vessel in good, clean and neat condition. In the event that the Vessel is arrested or detained by any officer of any Court or by any other authority, Owner hereby authorizes Mortgagee, its agents and appointees, to receive or take possession of the Vessel, and to defend any action or discharge any lien. Any expenses incurred by Mortgagee shall be added to the indebtedness secured by this Mortgage. If the Mortgagee pays any lien or claim, this shall be an Event of Default by Owner, and Mortgagee may immediately enter on and use the Vessel as it sees fit and this shall be regarded as a lawful repossession.

4. Each and every power or remedy given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as deemed necessary by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default.

5. The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the Vessel by Mortgagee, of any claim for damages, of any judgment, and of any insurance proceeds received by Mortgagee (except to the extent paid to Owner or applied in payment or repairs or otherwise for Owner's benefit) (hereinafter "Proceeds") shall be applied as follows:

First: To the payment of all attorneys' fees, court costs, and any other expenses, losses, charges or damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default with interest, as permitted by applicable law, on these amounts at the same rate of interest as provided in the Note, and to provide adequate indemnity against any liens claiming priority over this Mortgage.

Second: To the payment of all interest, to date of payment, on the Note and any or all other sums, including late charges and other fees, secured by this Mortgage, and to any balance of such proceeds, to the payment next of all matured installments of principal and then of all unmatured installments of principal in the inverse order of their maturity.

If, after deducting from the Proceeds the above amounts, there is a deficiency, Mortgagee may collect the deficiency jointly and severally from any Borrower and in doing so may apply, without prior notice, any deposits or other assets of any Borrower to payment of the deficiency. If, after making these deductions, there is a surplus, Owner is entitled to any surplus, subject to set-off in favor of Mortgagee for any indebtedness of Owner or any Borrower owed to Mortgagee.

6. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose related to the Note or this Mortgage, and all damages sustained by Mortgagee because of a default, shall be repaid by Owner on demand or, at Mortgagee's option, shall be added to the unpaid balance of the Note and paid by Borrower. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall their making relieve Owner of any obligation or default related to the advances and expenditures.

### Possession Until Default

Until one or more of the Events of Default have occurred, Owner shall be permitted to retain actual possession and use of the Vessel.

### Miscellaneous Provisions

1. Time is of the essence in this Agreement. There are no grace periods in this Mortgage. Mortgagee waives no rights by accepting late or partial payments, or delaying enforcing any of its rights hereunder. No changes, additions or deletions in any terms shall be valid unless signed by an officer of Mortgagee.
2. Any provisions deemed invalid under any law, rule or regulation of any governmental agency shall not affect any other provision.
3. This Mortgage is additional security given to Mortgagee as incentive to advance funds under the Note.
4. If more than one party is identified as "Owner" the term shall mean "Owner and each of them," and "Borrower" shall mean "Borrower and each of them." If this Mortgage is signed by more than one party, each is jointly and severally obligated.
5. If any party signing this Mortgage is a partnership (which includes a joint venture) this Mortgage shall be binding on the partnership and the obligations under this Mortgage shall remain in force and effect regardless of any changes in the individuals composing the partnership, and the term "Owner" shall include any altered or successor partnerships, and the predecessor partnerships and their partners shall not be released from any obligation or liability.
6. Nothing shall be construed to impose any obligation on SunTrust to extend, or continue to extend, any credit at any future time.
7. In the event this Mortgagee is transferred or assigned by Mortgagee, all references herein to SunTrust or Mortgagee shall refer to such transferee(s) and assignee(s).

As of the date first written above, Owner has executed this Mortgage under seal, and, if any Owner is a corporation or partnership or other entity, has caused this Mortgage to be executed in its name by a person authorized to do so.

| Owner | Owner FELIX CARCANO (SEAL) |
| By: _____ (SEAL) | Owner PATRICIA CARCANO (SEAL) |
| Signature | |
| Name and Title: _____ | Owner _____ (SEAL) |
| | |
| Owner | Owner |
| By: _____ (SEAL) | _____ (SEAL) |
| Signature | Borrower (if Borrower is not an Owner) |
| Name and Title: _____ | _____ (SEAL) |
| | Borrower (if Borrower is not an Owner) |

Wednesday, October 30, 2002 8:15 AM    GLORIA RECTOR VESSEL DOC ...

Case 7:08-cv-01042-CLB    Document 1    Filed 01/31/2008    Page 15 of 17

**Individual Acknowledgment**

State of: _New York_

City/County of: _Westchester_

On this _31st_ day of _October_, _2002_, before me

_James R. Carcano_ a notary public
(Print, Type or Stamp Commissioned Name of Notary Public)

for the above jurisdiction, personally appeared  __FELIX CARCANO AND PATRICIA CARCANO__

personally known to me, or satisfactorily proven by the following identification  _personally known to me_
(Type of Identification)

to be the person(s) whose name(s) is/are subscribed to the above Mortgage, who, being first duly sworn, took oath in due form of law and acknowledged that he/she/they executed the same for the purposes therein contained.

(Notary Seal)

[STAMP: JAMES R. CARCANO III, ESQ. NOTARY PUBLIC WESTCHESTER COUNTY No. 02CA5028... Commission Expires April 11, 2006]

Notary Public
My Commission Expires: _4/11/06_

**Acknowledgment On Behalf Of A Corporation, Limited Partnership, Or Other Entity**

State of: _____

City/County of: _____

On this _____ day of _____, _____, before me

_____ a notary public
(Print, Type or Stamp Commissioned Name of Notary Public)

for the above jurisdiction, personally appeared _____

personally known to me, or satisfactorily proven by the following identification _____
(Type of Identification)

to be the person whose name is subscribed to the above Mortgage, who, being first duly sworn, took oath in due form of law that he/she is the _____ of _____
(Office or status, such as President or General Partner)    (Name of Corporation, limited Partnership, or other entity)

("Company"), the Owner and Mortgagor described in the above Mortgage, and that by order of the Board of Directors, or as general partner, or owner of such Company, he/she executed the this Mortgage on behalf of, and as the act and deed of the Company.

(Notary Seal)

Notary Public
My Commission Expires:

**NATIONAL VESSEL DOCUMENTATION CENTER**
**USCG**
**RECEIVED/FILED**

MAR 26 '03      09:59 AM

RECORDED: BOOK 03:49  PAGE 245

DOCUMENTATION OFFICER

DEPT. OF TRANSP. USCG CG-1270 (REV. 09-01)   OMB APPROVED 2115-0110



# UNITED STATES OF AMERICA

### DEPARTMENT OF TRANSPORTATION
### UNITED STATES COAST GUARD

### NATIONAL VESSEL DOCUMENTATION CENTER

## *CERTIFICATE OF DOCUMENTATION*

| VESSEL NAME | OFFICIAL NUMBER | IMO OR OTHER NUMBER | YEAR COMPLETED |
|---|---|---|---|
| SALT SHAKER 301 | 1139586 | TQM29F121203 | 2002 |

| HAILING PORT | HULL MATERIAL | MECHANICAL PROPULSION |
|---|---|---|
| NEW YORK, NY | FRP | YES |

| GROSS TONNAGE | NET TONNAGE | LENGTH | BREADTH | DEPTH |
|---|---|---|---|---|
| 9 GRT | 7 NRT | 29.0 | 10.5 | 4.5 |

**PLACE BUILT**
PUNTA GORDA, FL

**OWNERS**
FELIX CARCANO
PATRICIA CARCANO

**OPERATIONAL ENDORSEMENTS**
RECREATION

**MANAGING OWNER**
FELIX CARCANO
18 ELIZABETH PLACE
ARMONK, NY 10504

**RESTRICTIONS**
NONE

**ENTITLEMENTS**
NONE

**REMARKS**
NONE

**ISSUE DATE**
MAY 12, 2003

**THIS CERTIFICATE EXPIRES**
MAY 31, 2004

*Thomas L. Willis*
DIRECTOR, NATIONAL VESSEL DOCUMENTATION CENTER

LCC

PREVIOUS EDITION OBSOLETE - THIS CERTIFICATE MAY NOT BE ALTERED